

## NUMBER 13-06-471-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **DAY CRUISES MARITIME, L.L.C. AND CORPUS CHRISTI DAY CRUISE, L.L.C.,** | **Appellants,** |

**v.**

| | |
|---|---|
| **CHRISTUS SPOHN HEALTH SYSTEM D/B/A CHRISTUS SPOHN HOSPITAL MEMORIAL,** | **Appellee.** |

### On appeal from the 117th District Court of Nueces County, Texas.

## O P I N I O N

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Opinion by Justice Garza

Appellants Day Cruises Maritime, L.L.C. and Corpus Christi Day Cruise, L.L.C. appeal from summary judgments granted in favor of appellee Christus Spohn Health System d/b/a Christus Spohn Hospital Memorial ("Christus"). By three issues, appellants contend that the trial court erred. For purposes of organization, appellants' issues will be reordered and referred to as follows: (1) the trial court erred in granting Christus's motion for summary judgment on Christus's counterclaim; (2) the trial court erred in granting Christus's motion for summary judgment, and denying appellants' motion for summary

judgment, on appellant's plea in intervention; and (3) the trial court deprived appellants of due process of law. We affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Judy Ann Lanado, a citizen of the Phillippines, was employed as a card dealer on the "M/V TEXAS TREASURE," a casino vessel operating out of Port Aransas, Texas. Day Cruises Maritime, L.L.C. was the disponent owner of the vessel.[1] The vessel was jointly managed and operated by Florida Day Cruises, Inc. and Corpus Christi Day Cruise, L.L.C. While working on the vessel in August of 2002, Lanado, who was pregnant at the time, became ill. She was first taken to a hospital in Aransas Pass, Texas, and was then moved to Christus in Corpus Christi on August 21, 2002, and admitted there with a diagnosis of cholelithiasis, or stones in the gall bladder. Upon her admission to Christus, Lanado signed a document entitled "Release of Information and Assignment of Health Insurance Benefits" that provided as follows:

1. I authorize CHRISTUS Spohn to a) submit this claim on my behalf and b) receive payment of any authorized benefits, including benefits payable for any physician(s) services due those physicians under contract to the hospital.

2. I certify that the information I have furnished to the Registration Office is correct.

3. I guarantee payment for all services, including those not covered by insurance, Medicaid or Medicare.

4. I hereby authorize my insurance benefits to be paid directly to the physician rendering care of above named patient, for their professional services, and I am financially responsible for non-covered services.

5. I authorize the physician or supplier of care to release any or all of the patient's medical record required for payment. This includes the ordering

---

[1] A "disponent owner" of a vessel is a person or company which has commercial control over a vessel's operation without owning the ship as in a "bareboat charter." M-i-link.com Maritime Dictionary, *available at* http://www.m-i-link.com/dictionary/default.asp?term=bareboat+charter (last visited Apr. 17, 2008). A "bareboat charter" is a type of charter in which the shipowner provides only the ship and gives the charterer—in this case, Day Cruises Maritime, L.L.C.—complete control, management and operation of the vessel for the agreed leasing period. *Id.*

2

and results of HIV testing and/or the diagnosis of AIDS, and psychiatric disorders or treatment.

On August 23, 2002, Paula E. Coots, a "human resource assistant" for Texas Treasure, signed a document entitled "Guarantee of Payment (Under Section 253 of the Immigration and Nationality Act)." The form stated as follows:

> I, Paula E. Coots, as Human Resource Assistant of the vessel or aircraft MV TEXAS TREASURE employing the alien crewman LANADO, JUDY ANN who upon arrival at the port of PT. ARANSAS, TX on 21 AUGUST 02 was found to be afflicted with, or suspected of being afflicted with GALL BLADDER. I hereby guarantee to pay any and all expenses incurred or to be incurred for the hospitalization, care, and treatment, and for burial in the event of death, of the said alien crewman.

Following surgery at Christus to treat her gall bladder condition, Lanado developed internal bleeding in her abdomen that led to tachycardia and hypotension. As a result of these complications, the fetus died and Lanado suffered severe brain damage due to lack of oxygen. On or about September 27, 2002, she lapsed into a cerebral coma. Although she recovered from her cholelithiasis condition, the cerebral coma left Lanado in a permanent vegetative state. Lanado remained at Christus until her transfer to Avalon Place, a nursing home, on October 1, 2003. Her treatment at Christus lasted over thirteen months and resulted in total medical charges of $1,089,959.82.

On December 31, 2002, Jasper Lanado, Judy's brother and permanent guardian, filed a health care liability claim against Christus alleging that Christus was negligent in its care of Judy.[2] Specifically, the Lanados asserted that, while Judy Ann Lanado was at Christus, she "was ignored by physicians and staff to a degree falling below the standard of care necessary as required by Texas law" and that "[t]hese acts and omissions proximately caused the injury to Plaintiffs." Christus filed its original answer to the Lanados' suit on January 31, 2003, denying all allegations.

---

[2] Jasper Lanado originally brought suit in his capacity as permanent guardian of Judy Ann Lanado and as next friend of Judy's two minor daughters, Joyze Ann Danielle Lanado and Mitze Franchette Lanado. The record also reflects that at some point thereafter, Judy Ann Lanado's mother, Anunciacion Sierra, also became a named plaintiff. The plaintiffs will be referred to collectively as "the Lanados."

3

On November 14, 2003, Day Cruises Maritime, L.L.C., Florida Day Cruises, Inc., and Corpus Christi Day Cruise, L.L.C. (collectively referred to as "Texas Treasure") filed a plea in intervention in the Lanados' lawsuit, stating first that under general maritime law it is potentially responsible as Judy's employer for paying her medical expenses, but that it was entitled to damages from the Lanados on the theory that it was equitably subrogated to the Lanados for those medical expenses. Texas Treasure filed an amended plea in intervention on November 21, 2003, adding a request for declaratory judgment that Texas Treasure was not obligated to pay Christus for Lanado's medical care. On November 25, 2003, Texas Treasure filed a traditional motion for summary judgment based on its plea in intervention.

Christus subsequently filed a counterclaim against Texas Treasure, contending that Texas Treasure was solely responsible for paying Lanado's hospital bill.[3] Christus filed a motion for summary judgment on the counterclaim on October 14, 2005. The counterclaim and the motion for summary judgment asserted that Texas Treasure was responsible for the entirety of Lanado's hospital bill as a matter of law, for three reasons: (1) Christus had a valid suit on a sworn account and Texas Treasure had failed to file an effective verified denial, see TEX. R. CIV. P. 165; (2) Texas Treasure had executed a valid guarantee of payment with respect to Lanado's medical expenses; and (3) Texas Treasure had a duty of payment to Lanado as a matter of law, and Lanado had effectively assigned to Christus her rights corresponding to that duty.[4]

On or about December 2003, the Lanados settled their claim against Christus. As part of the settlement agreement, Christus agreed to pay a lump sum, and fund an annuity

---

[3] Christus filed an amended counterclaim against Texas Treasure on December 31, 2003. The amended counterclaim was Christus's active pleading at the time that the trial court granted its motion for summar judgment. However, we will refer here to Christus's amended counterclaim as its "counterclaim" for purposes of convenience.

[4] As discussed fully herein, general maritime law provides that a shipowner must pay "maintenance and cure" to a seaman who is injured or becomes ill while in the service of a ship. *Maritime Overseas Corp. v. Waiters*, 917 S.W.2d 17, 18 (Tex. 1996) (citing *Vaughn v. Atkinson*, 369 U.S. 529 (1961) and *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995)). The injured or ill seaman is entitled to maintenance and cure benefits regardless of whether the shipowner was at fault. *Waiters*, 917 S.W.2d at 18.

4

that would provide periodic payments to the Lanados.[5]  At a hearing on December 13, 2003, Jasper Lanado and the guardian ad litem for the two minor children testified that the settlement agreement was fair and in the best interests of Lanado and her family.  The trial court entered an agreed judgment on April 7, 2004, approving the settlement agreement.  Neither the settlement agreement nor the agreed judgment contained an admission of negligence or liability on the part of Christus.  In fact, the agreed judgment stated specifically that "[t]he Court is further of the opinion that the liability of the Defendant [Christus] is uncertain, doubtful, indefinite, and disputed."  As part of the settlement, the Lanados agreed to assign to Christus their right to seek recovery of Judy's medical expenses from her employer.[6]

Meanwhile, the claims between Texas Treasure and Christus remained pending in the trial court.  Both Texas Treasure and Christus filed traditional motions for summary judgment with respect to the claims made by Texas Treasure in its plea in intervention.  Texas Treasure argued that it was entitled to summary judgment on its plea in intervention because, as a matter of law, it was equitably subrogated to the amounts received by the Lanados under their settlement agreement; Christus argued that Texas law provides no such remedy and so those claims must fail as a matter of law.  After a hearing on March 26, 2004, the trial court denied Texas Treasure's motion for summary judgment and granted Christus's motion for summary judgment as to Texas Treasure's claims in their plea in intervention.[7]

After a hearing on March 3, 2006, the trial court granted Christus's motion for

---

[5] Neither party advises this Court of the exact amount(s) which Christus agreed to pay the Lanados pursuant to their settlement agreement.  Moreover, the dollar amounts of the settlement are redacted in the copy of the agreement in the record that is referenced by Christus.

[6] Christus notes that this assignment was merely a "ratification" of Lanado's earlier assignment of her maintenance and cure benefits to Christus as evidenced by the "Release of Information and Assignment of Health Insurance Benefits" that Lanado signed upon her admission to Christus.

[7] The trial court entered written interlocutory orders on April 27, 2004, denying Texas Treasure's motion for summary judgment, and on May 3, 2004, granting Christus's motion for summary judgment as to all of Texas Treasure's affirmative claims for relief.

summary judgment with respect to its counterclaim against Texas Treasure, finding in favor of Christus on all three grounds asserted in its counterclaim.

Prior to the March 3, 2006 hearing, however, Christus had filed a Supplemental Motion for Summary Judgment which included an attorney's fees affidavit that had not been filed with any previous motion. This Supplemental Motion for Summary Judgment was apparently not served upon Texas Treasure's trial counsel.[8] After the March 3, 2006 hearing, having discovered that they were not served with Christus's Supplemental Motion for Summary Judgment, Texas Treasure filed a motion for sanctions and a motion for leave to file a response to the supplemental motion. After an additional hearing on May 3, 2006, the trial court denied Texas Treasure's motion for sanctions, but partially granted Texas Treasure's motion for leave to file a response to the Supplemental Motion for Summary Judgment, stating that it could file a response with regard to attorney's fees only.[9]

The trial court rendered its written final judgment on May 26, 2006, awarding Christus damages and pre-judgment interest in the sum of $1,272,714.68. Texas Treasure was also ordered to pay $49,518.68 to Christus in attorney's fees, along with another $25,000 in attorney's fees upon an unsuccessful appeal by Texas Treasure to this Court and $10,000 in attorney's fees upon an unsuccessful appeal by Texas Treasure to the Texas Supreme Court.[10] The trial court specifically stated in its order that Christus's motion for summary judgment:

---

[8] Christus notes correctly that the document with which Texas Treasure was not served was actually entitled "Counter-Plaintiff Christus Spohn Health System's Reply to Response of Intervenors [Texas Treasure] to Motion for Summary Judgment of Christus on Counterclaim Against Intervenors and Christus'[s] Supplement to Motion for Summary Judgment." For brevity's sake, we will refer to this document as Christus's "Supplemental Motion for Summary Judgment."

[9] Texas Treasure also filed an Objection to Entry of Judgment, contending that the trial court should not enter a judgment based on its ruling at the hearing of March 3, 2006, until such time as Texas Treasure's response to Christus's Supplemental Motion for Summary Judgment could be considered. This was granted by the trial court at the hearing of May 3, 2006.

[10] The May 26, 2006 final judgment also memorialized the trial court's previous rulings: (1) denying Texas Treasure's motion for leave to file its fourth amended answer to Christus's counterclaim; (2) denying Texas Treasure's motion for sanctions; (3) partially granting Texas Treasure's motion for leave to file a response to Christus's Supplemental Motion for Summary Judgment; and (4) granting Texas Treasure's Objection to Entry of Judgment.

6

[I]s meritorious and should be granted on all grounds, specifically, a valid sworn account without effective verified denial; Guarantee of Payment under the Immigration and Nationality Act, 8 C.F.R. §253.1(a) executed by the M/V Texas Treasure; duty of payment of the medical expenses of Judy Lanado under the Immigration and Nationality Act, 8 C.F.R. §253.1(e), and the executed Assignment of Benefits.

Neither party requested findings of fact or conclusions of law.

On May 23, 2006, Florida Day Cruises, Inc., filed a suggestion of bankruptcy with the trial court, stating that the company had filed a voluntary petition for Chapter 7 bankruptcy protection in Florida on January 18, 2005. *See* 11 U.S.C. §§ 701–784. Following this development, Christus filed an unopposed motion on July 27, 2006 to sever its claim against Florida Day Cruises, Inc. The trial court granted the motion by written order on September 22, 2006. Florida Day Cruises, Inc., is not a party to this appeal.

Appellants filed their "Motion for Reconsideration and Motion for New Trial" on June 23, 2006, which was overruled by operation of law on August 9, 2006. *See* Tex. R. Civ. P. 329b(c). Appellants filed their Notice of Appeal on August 24, 2006. This appeal ensued.

## II. Jurisdiction

On appeal, appellants first assert that we have no jurisdiction to consider this appeal, contending that the judgment issued on May 26, 2006 was voidable and not final because it was rendered not only against appellants but also against Florida Day Cruises, Inc., which had previously filed for bankruptcy. *See* 11 U.S.C. § 362(a); *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 604 (2000) (stating that "when a defendant files a bankruptcy petition, an automatic stay goes into effect and abates any judicial proceeding against that party."). Although the automatic stay would operate only against the bankruptcy debtor, Florida Day Cruises, and not against appellants, *see id.*, appellants contend that the May 26, 2006 judgment was voidable as to appellants because the court's order of severance as to Florida Day Cruises was not entered until September 14, 2006, which, according to appellees, was after the court's plenary jurisdiction had expired. *See* Tex. R. Civ. P. 329b(e) (providing that a trial court's plenary power to modify a judgment expires thirty

days after any timely-filed motions for new trial are overruled); *Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 547 (Tex. 1991) (stating that "[a] summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless a severance is ordered."). However, as appellants seem to have subsequently recognized, this argument is senseless. The only way the trial court's plenary jurisdiction could have expired prior to the entrance of the severance order is if the May 26, 2006 judgment was in fact final and subject to appeal. If, as appellants argue, the May 26, 2006 judgment was interlocutory and not appealable, then the trial court's plenary jurisdiction did not expire and the order of severance was valid, rendering the May 26, 2006 judgment final with respect to appellants. We conclude that the May 26, 2006 judgment became final upon the trial court's order of severance on September 14, 2006.[11] We therefore have jurisdiction to consider this appeal.

### III. STANDARD OF REVIEW

We review a trial court's grant or denial of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.); *see also Md. Cas. Co. v. S. Tex. Med. Clinics, P.A.*, No. 13-06-089-CV, 2008 Tex. App. LEXIS 279, at *9-11 (Tex. App.–Corpus Christi Jan. 10, 2008, pet. filed) (mem. op.). The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a trial by jury. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Alaniz*, 105 S.W.3d at 345.

To obtain relief via a traditional motion for summary judgment, the movant must

---

[11] We note that appellants filed their notice of appeal on August 24, 2006, which was prior to the date that we consider the trial court's judgment to have become final. Appellants' notice of appeal was therefore prematurely filed. However, Texas Rule of Appellate Procedure 27.1(a) provides that "[i]n a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal." TEX. R. APP. P. 27.1(a). Appellants' notice of appeal is therefore deemed to have been filed on September 14, 2006, after the trial court entered its order of severance with respect to Florida Day Cruises, Inc.

establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the movant, however, will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Moreover, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 549.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court should review both parties' summary judgment evidence and determine all questions presented. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 765 (Tex. App.–Fort Worth 2006, no pet.). The reviewing court should render the judgment that the trial court should have rendered. *See FM Props.*, 22 S.W.3d at 872; *Warrantech*, 210 S.W.3d at 765. In reviewing a summary judgment, we consider all grounds presented to the trial court and preserved on appeal in the interest of judicial economy. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) and *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)).

## IV. CHRISTUS'S COUNTERCLAIM

By their first issue, appellants argue that the trial court erred in granting Christus's motion for summary judgment on its counterclaim against Texas Treasure. We agree. As noted above, the trial court granted Christus's summary judgment on its counterclaim,

9

finding that Texas Treasure was liable for Lanado's entire hospital bill based on three distinct grounds: (1) a valid sworn account without an effective verified denial; (2) Texas Treasure's guarantee of payment under the Immigration and Nationality Act; and (3) Texas Treasure's duty of paying benefits under the doctrine of maintenance and cure in conjunction with Lanado's alleged assignment of benefits to Christus.[12]

## A.    Christus's Suit on a Sworn Account

The essential elements to prove a sworn account are: (1) that there was a sale and delivery of merchandise or performance of services; (2) that the amount of the account is just, that is, that the prices were charged in accordance with an agreement or were customary and reasonable prices; and (3) that the amount is unpaid. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 773 (Tex. App.–Corpus Christi 2001, no pet.); *Worley v. Butler*, 809 S.W.2d 242, 245 (Tex. App.–Corpus Christi 1990, no writ). When a plaintiff presents prima facie evidence of an account through sworn testimony, the defendant must file a proper verified denial if it wishes to challenge the validity or amount of the account. *See* TEX. R. CIV. P. 185; *see also* TEX. R. CIV. P. 93 ("A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit. . . . (10) A denial of an account which is the foundation of the plaintiff's action, and supported by affidavit.").

Appellants argue that the trial court erred in granting Christus's summary judgment on sworn account grounds for three reasons: (1) Christus's suit on a sworn account was not maintainable as a matter of law; (2) if the suit was properly maintainable as a suit on a sworn account, appellants contend that their verified denial was effective; and (3) if appellants' verified denial was ineffective, appellants contend that they were improperly denied the opportunity to amend their answer to provide an effective verified denial.

---

[12] On appeal, Christus refers to a document entitled "Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean Going Vessels," which included a provision that the employer of an injured or ill seaman shall be liable for the full cost of the seaman's hospital and medical expenses. However, because Christus provided no evidence that these "Standard Terms and Conditions" were actually applicable to Lanado's employment with Texas Treasure, we do not consider this to be a valid basis upon which Christus's summary judgment may have been granted.

10

### 1. Validity of Christus's Suit on a Sworn Account as a Matter of Law

Christus produced summary judgment evidence showing that it provided medical services to Judy Ann Lanado, that the amounts charged were reasonable, and that the amount is unpaid, thereby presenting prima facie evidence sufficient to sustain a suit on a sworn account. Nevertheless, appellants claim that Christus's suit was not maintainable as a matter of law, for two reasons. First, appellants claim that there must be a sale and purchase of personal property to sustain a suit on a sworn account, and that there was no such exchange here. We disagree. Debts incurred as a result of the provision of medical services may be enforced by a suit on a sworn account. *See, e.g., Andrews v. E. Tex. Med. Ctr.*, 885 S.W.2d 264, 268 (Tex. App.–Tyler 1994, no writ); *Bryant v. Mission Mun. Hosp.*, 575 S.W.2d 136, 137 (Tex. Civ. App.–Corpus Christi 1978, no writ); *Leyendecker v. Santa Rosa Med. Ctr.*, 533 S.W.2d 868, 868-70 (Tex. Civ. App.–Tyler 1976, no writ).

Second, appellants claim that they are "strangers to the account" because there was no creditor-debtor relationship between appellants and Christus. However, appellants do not cite any authority indicating that such a relationship is necessary to the maintenance of a suit on a sworn account. As such, that argument was inadequately briefed and therefore waived. *See* TEX. R. APP. P. 38.1(h).

### 2. Efficacy of Texas Treasure's Sworn Denial

Appellants next contend that, even if Christus's suit on a sworn account was maintainable as a matter of law, summary judgment on that ground was improper because appellants filed an effective sworn denial. *See* TEX. R. CIV. P. 185. Texas Treasure's third amended original answer to Christus's counterclaim, which was the live pleading at the time the trial court considered Christus's motion for summary judgment, contained an affidavit executed by Texas Treasure's trial counsel which read in relevant part the following:

> On this day personally appeared before me, the undersigned notary public, JAMES F. BUCHANAN, who stated he is the attorney for Intervenors [Texas

11

Treasure], and that he has read Paragraph I.A. Verified Denial of Intervenors['] Third Amended Answer in the above styled and numbered cause; and that every statement therein is true and correct within his personal knowledge **or upon information and belief**.

(Emphasis added.)

The trial court, in awarding summary judgment on sworn account grounds to Christus, found this sworn denial to be ineffective. We agree that Texas Treasure's live sworn denial was ineffective. An affidavit which does not positively *and unqualifiedly* represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally invalid. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (emphasis added); *see Fed. Fin. Co. v. Delgado*, 1 S.W.3d 181, 184 (Tex. App.–Corpus Christi 1999, no pet.). In the context of a suit on a sworn account, courts have held the verified denial required by Rule 185 must strictly comply with the requirements of Rule 93 regarding verified pleas. *See Brown v. Starrett*, 684 S.W.2d 145, 147 (Tex. App.–Corpus Christi 1984, no writ); *Edinburg Meat Prods. Co. v. Vernon Co.*, 535 S.W.2d 432, 435 (Tex. Civ. App.–Corpus Christi 1976, no writ). Rule 93, which sets forth requirements for the verification of various pleas, specifically permits some verified pleadings to be based on "information and belief." *See, e.g.,* TEX. R. CIV. P. 93(8) (denial of the genuineness of the indorsement or assignment of a written instrument); 93(13) (denial of pleadings in appeals to the Texas Workers' Compensation Commission); 93(15) (denial of allegations in suits against automobile insurance companies). However, Rule 93(10), applicable to the denial of a sworn account, does not permit verification based on "information and belief"; rather, it requires verification unqualifiedly based on the affiant's personal knowledge. TEX. R. CIV. P. 93(10); *see Gayne v. Dual-Air, Inc.*, 600 S.W.2d 373, 374-75 (Tex. Civ. App.–Houston [14th Dist.] 1980, no writ) (finding an affiant's denial of a sworn account "to the best of his knowledge" to be ineffective). The trial court did not err in ruling that the sworn denial contained in Texas Treasure's third amended answer was ineffective.

3. **Trial Court's Denial of Texas Treasure's Motion for Leave to File Fourth Amended Answer to Christus's Counterclaim**

12

Finally, appellants argue that, even if their live sworn denial was ineffective, the trial court erred in denying them leave to file a fourth amended answer to Christus's counterclaim to contain a properly verified denial. We agree. A trial court has no discretion to refuse a party's request for leave to amend its pleadings unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *see* TEX. R. CIV. P. 63, 66.

Christus asserts that "granting Texas Treasure leave to cure the defect in its verified denial would have been patently prejudicial to Christus by depriving it of the presumptive validity of (and immediate recovery on) its suit on sworn account and by requiring it to litigate the merits of that claim at considerable additional expense." Christus also claims that Texas Treasure should not be afforded more than one opportunity to correct the error in its pleadings, and that for the trial court to do so would have given Texas Treasure "a second bite at the apple."[13] These arguments, however persuasive, do not constitute "evidence of surprise or prejudice." *See Greenhalgh*, 787 S.W.2d at 939, 941 (finding that trial court did not abuse its discretion by granting plaintiff's motion to amend pleading to increase amount of damages requested, because defendant, although claiming to be "prejudiced," did not show any evidence of prejudice or surprise). Moreover, the amended pleading that Texas Treasure sought leave to file did not include any new causes of action or defenses; rather, it was seeking to correct a technical error in the wording of its verified denial to the sworn account claim.

We recognize that a litigant must not be given unlimited opportunities to correct an error in its pleadings; however, we are unwilling to create an exception to the rule that surprise or prejudice to the non-moving party must be shown for a trial court to deny the

---

[13] In support of this argument, Christus notes that Texas Treasure was previously permitted to file a second amended answer to Christus's counterclaim for the express purpose of adding an effective verified denial. After Christus amended its counterclaim, however, Texas Treasure responded by filing a third amended answer which contained the defective denial.

13

moving party an opportunity to amend. *See Greenhalgh*, 787 S.W.2d at 939. We therefore conclude that the trial court abused its discretion in denying Texas Treasure's motion for leave to file its fourth amended answer to Christus's counterclaim to include a properly verified denial.

Had the trial court permitted Texas Treasure to file a fourth amended answer to Christus's counterclaim to include an effective verified denial, Christus's suit on a sworn account would have been put at issue and summary judgment on those grounds would have been inappropriate. We find, therefore, that the trial court erred in granting Christus's summary judgment on its counterclaim on the basis of a valid suit on a sworn account without effective verified denial. We will now consider whether the trial court was justified in granting Christus's motion for summary judgment on any of the other specified grounds.

## B.      Guarantee of Payment

The trial court also awarded Christus summary judgment based on the guarantee of payment signed by Texas Treasure's human resource assistant, Paula Coots. It is undisputed that Coots was properly acting on Texas Treasure's behalf when she signed a document entitled "Guarantee of Payment (Under Section 253 of the Immigration and Nationality Act)" (hereinafter the "Guarantee") guaranteeing "to pay any and all expenses incurred or to be incurred for the hospitalization, care, and treatment, and for burial in the event of death, of the said alien crewman [Lanado]."

Appellants challenge the trial court's ruling by first claiming that the Immigration and Nationality Act (the "Act"), under authority of which the Guarantee was signed, does not explicitly or implicitly create a private cause of action. Appellants are correct that the Act does not explicitly provide for a private cause of action to enforce a guarantee of payment executed pursuant to the Act. *See* 8 U.S.C. § 1283.[14] However, Christus did not seek to

---

[14] Section 1283 of Title 8 of the United States Code provides:

§ 1283. Hospital treatment of alien crewmen afflicted with certain diseases.

An alien crewman, including an alien crewman ineligible for a conditional permit to land under section 1282(a) of this title, who is found on arrival in a port of the United States to be

recover payment from Texas Treasure on the basis of a federal cause of action; rather, it merely sought to enforce the Guarantee as a contract. We agree with Christus that "[t]he trial court's references to the [Act] are merely intended to support the applicability and enforceability" of the Guarantee and are not intended to indicate that Christus's cause of action arose from, or was authorized by, the Act.[15] We do not, therefore, reach the issue of whether the Act implicitly provides a private right of action to enforce a guarantee of payment executed pursuant to the Act.

Appellants next claim that Christus did not have standing to enforce the Guarantee because it was not a third-party beneficiary of the Guarantee. We agree. There is a legal presumption against, not in favor of, third-party beneficiary agreements, and absent any clear indication in the contract that the parties intended to confer a direct benefit to the third party, the third party may not maintain an action as a third-party beneficiary. *City of Alton v. Sharyland Water Supply Corp.,* 145 S.W.3d 673, 682 (Tex. App.–Corpus Christi 2004, pet. denied) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). The intention to contract or confer a direct benefit to a third party must be

---

afflicted with any of the disabilities or diseases mentioned in section 1285 of this title, shall be placed in a hospital designated by the immigration officer in charge at the port of arrival and treated, all expenses connected therewith, including burial in the event of death, to be borne by the owner, agent, consignee, commanding officer, or master of the vessel or aircraft, and not to be deducted from the crewman's wages. No such vessel or aircraft shall be granted clearance until such expenses are paid, or their payment appropriately guaranteed, and the collector of customs is so notified by the immigration officer in charge. An alien crewman suspected of being afflicted with any such disability or disease may be removed from the vessel or aircraft on which he arrived to an immigration station, or other appropriate place, for such observation as will enable the examining surgeons to determine definitely whether or not he is so afflicted, all expenses connected therewith to be borne in the manner hereinbefore prescribed. In cases in which it appears to the satisfaction of the immigration officer in charge that it will not be possible within a reasonable time to effect a cure, the return of the alien crewman shall be enforced on, or at the expense of, the transportation line on which he came, upon such conditions as the Attorney General shall prescribe, to insure that the alien shall be properly cared for and protected, and that the spread of contagion shall be guarded against.

8 U.S.C. § 1283.

[15] We further note that section 253 of the Immigration and Nationality Act (8 U.S.C. § 1283) does not appear to be applicable to Judy Ann Lanado's injuries. As discussed above, that section applies only to alien crewmen who are "found on arrival in a port of the United States to be afflicted with any of the disabilities or diseases mentioned in section 1285. *Id.* The conditions mentioned in section 1285 are "feeble-mindedness, insanity, epilepsy, tuberculosis in any form, leprosy, or any dangerous contagious disease." 8 U.S.C. § 1285. It is undisputed that Lanado suffered from none of these conditions.

15

clearly and fully spelled out or enforcement by the third party must be denied. *MCI Telecomms. Corp.*, 995 S.W.2d at 651. Moreover, the burden is on the third party seeking to enforce the agreement to show that the agreement was intended for that party's direct benefit. *See German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912).

The Guarantee did not mention Christus or any other health care provider by name; rather, it was a form required to be filed with the United States Department of Justice under regulations promulgated by the agency then known as the Immigration and Naturalization Service. *See* 8 C.F.R. § 253.1(a) (providing in part that "[t]he guarantee of payment for medical and other related expenses required by section 253 of the Act [8 U.S.C. § 1283] shall be executed by the owner, agent, consignee, commanding officer or master on Form I-510 [Guarantee of Payment]."). Christus summarily states that it is "a primary (and, at the very least, a third-party) beneficiary of the Guarantee," but Christus does not assert that the Guarantee itself contained a "clear indication" or "clearly and fully spelled out" that Christus was intended to be such a beneficiary. *See City of Alton*, 145 S.W.3d at 682; *MCI Telecomms. Corp.*, 995 S.W.2d at 651. Christus therefore did not meet its burden in showing that the Guarantee was intended for its benefit, and so it did not have standing to enforce the Guarantee as a third-party beneficiary.

We conclude that the trial court erred in granting Christus's summary judgment on its counterclaim on the basis of the Guarantee of Payment signed by Coots. We now turn to the final basis for Christus's summary judgment on its counterclaim as identified by the trial court.

C.    **Texas Treasure's Duty of Maintenance and Cure**

The third independent ground upon which the trial court granted Christus's summary judgment was Texas Treasure's duty of maintenance and cure under general maritime law in conjunction with the assignment of benefits executed by Lanado upon her admission to

16

Christus.[16] The doctrine of maintenance and cure, applicable in admiralty cases, provides that a seaman who is injured or becomes ill while in the service of a ship is entitled to food and lodging ("maintenance") and medical services ("cure") from the shipowner. *Vaughn v. Atkinson*, 369 U.S. 527, 531 (1962); *Maritime Overseas Corp. v. Waiters*, 923 S.W.2d 36, 40 (Tex. App.–Houston [1st Dist.] 1995), *modified on other grounds and aff'd*, 917 S.W.2d 17 (Tex. 1996). A shipowner must pay an injured or ill seaman maintenance and cure regardless of whether the shipowner was at fault or whether the ship was unseaworthy. *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995). The United States Supreme Court has summarized the policies underlying the duty as:

> [T]he protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.

*Vaughan*, 369 U.S. at 531 (citing *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938)). Appellants do not dispute that Lanado is a "seaman" entitled to maintenance and cure. Appellants do assert, however, that they raised material issues of fact with respect to the extent of their liability under this doctrine, which should have precluded an award of summary judgment to Christus. Specifically, appellants claim that there are issues of material fact with respect to: (1) whether Lanado reached "maximum cure" prior to the time she was discharged from Christus; and (2) whether the charges incurred by Lanado at Christus were reasonable and necessary.

### 1. Maximum Cure

The doctrine of maintenance and cure is limited in that the shipowner is only

---

[16] Appellants claim that the assignment of benefits executed by Lanado upon her admission to Christus was ineffective because "[p]ersonal injury claims are not assignable in admiralty cases." Without reaching the merits of this argument, we note that appellants failed to assert this argument in its response to Christus's motion for summary judgment; rather, it was asserted for the first time in Texas Treasure's motion for new trial. Therefore, the argument has been waived. *See Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 765 (Tex. App.–Corpus Christi 2006, no pet.) (stating that "[a]ny issue which the non-movant claims would justify denying summary judgment must be included in its response" to the motion for summary judgment); *see also* TEX. R. APP. P. 33.1(a)(1).

17

responsible for an injured seaman's medical expenses until such time as the seaman obtains "maximum cure." *Royal Ins. Co. of Am. v. Sphere Drake Underwriting Mgmt., Ltd.*, 997 S.W.2d 432 (Tex. App.–Beaumont 1999, pet. denied). Maximum cure is defined as that point where no further treatment will improve the condition. *Waiters*, 923 S.W.2d at 40. Moreover, in the case of an incapacitated seaman, maximum cure does not occur until such time as the incapacity is declared to be permanent. *Vella v. Ford Motor Co.*, 421 U.S. 1, 4 (1975).

To support their contention that an issue of material fact was raised with regard to maximum cure, appellants cite an affidavit executed by Joseph Varon, M.D. dated November 22, 2005, which was included as part of Texas Treasure's summary judgment evidence. This affidavit stated in relevant part as follows: "[M]ore likely than not after November 11, 2002, when Judy Lanado reached maximum improvement of her neurological condition, that she no longer required the acute care medicine services at [Christus]."

Without determining whether the content of the Varon affidavit is sufficient to raise an issue of material fact with respect to maximum cure, we note that the date upon which maximum cure becomes effective is not the date *in fact* when no further treatment would have improved the condition; rather, it is the date on which the medical diagnosis of maximum cure is made, even if that diagnosis is made after the fact. *Vella*, 421 U.S. at 4. In *Vella*, the United States Supreme Court held that, although a seaman's injury was in fact permanent immediately after the accident, the shipowner owed maintenance and cure to the seaman up until the date when medical diagnosis of the immediate, permanent incapacity was first made by the shipowner's medical witness. *Id.* at 5, n.4. Here, the purported diagnosis of permanent incapacity was first made by Varon over two years after Lanado was discharged from Christus. Thus, even if Varon's affidavit were taken as true, and even if it were to suffice to show that maximum cure was reached, Texas Treasure would still have owed maintenance and cure to Lanado throughout her entire stay at

Christus. Therefore, appellants have not established that there is an issue of material fact in dispute with respect to maximum cure.

## 2. Reasonableness of Medical Charges

Another limitation to the duty of maintenance and cure is that a shipowner is liable only insofar as the medical expenses of an injured seaman are reasonable and necessary. *See Waiters*, 917 S.W.2d at 18; *see also Socony-Vacuum Oil Co. v. Aderhold*, 240 S.W.2d 751, 755 (Tex. 1951) (stating that "[i]n admiralty, if a defendant believes that amounts actually expended for maintenance and cure are unreasonable, he may offer rebuttal proof."). Appellants assert that their summary judgment evidence raised material issues of fact with respect to whether the charges incurred by Lanado at Christus were in fact reasonable and necessary. We agree.

The summary judgment evidence produced by Christus included an affidavit signed on August 31, 2005 by William Burgin, M.D. This affidavit stated in relevant part:

> I was the attending physician for Ms. Lanado for the majority of her hospital admission. As such, I was one of the physicians in charge of her medical care for this hospital admission. I have personal knowledge of the medical and hospital care which was needed by Ms. Lanado, as well as the medical and hospital care which was provided to Ms. Lanado by the doctors, nurses, and other healthcare providers at [Christus] from August 21, 2002 through October 1, 2003. The medical and hospital services provided to Ms. Lanado from August 21, 2002 through October 1, 2003, as reflected in her medical records, were usual, customary, reasonable, and necessary at the time and place the services were rendered, based on Ms. Lanado's health condition and diagnoses at the time.

Christus also provided an affidavit by Margaret Dippel, Director of Patient Financial Services at Christus, which accompanied Lanado's medical records at Christus detailing the $1,089,959.82 bill. The affidavit stated in relevant part: "The prices charged, as reflected in the account, are in accordance with the agreement between Judy A. Lanado and [Christus] and are the usual, customary and reasonable price for the services rendered."

In response, Texas Treasure provided summary judgment evidence in the form of

19

affidavits by Varon, as noted above, and by Harvey Cooper. Varon's affidavit stated in relevant part: "It is clear from my review of the records, that Ms. Lanado suffered brain damage unnecessarily, due to negligence, gross negligence and malpractice of her healthcare providers . . . ." Cooper's affidavit stated in relevant part:

> I am familiar with the Affidavit of Margaret Dippel and the invoice of [Christus] for hospital services rendered for Judy Lanado. In my experience based on my 19 years as an auditor of medical invoices, the prices charged by [Christus] are not usual, customary and reasonable prices for the services rendered. . . . In addition, I have reviewed the Affidavit of Joseph Veron, M.D. dated November 22, 2005, with respect to Judy Lanado, and Dr. Varon's opinion that she reached the maximum medical cure on November 11, 2002, and thereafter, no longer needed the level of medical services available to be provided at [Christus]. It is therefore my opinion that the charges made by [Christus] after November 11, 2002 were not reasonable or necessary.

Taking Varon's and Cooper's allegations as true, *see Nixon*, 690 S.W.2d at 548-49, we conclude that appellants raised a genuine issue of material fact with regard to the reasonableness and necessity of the medical charges incurred by Judy Ann Lanado at Christus. Because there are issues of material fact in dispute with regard to the extent of appellants' liability under the maintenance and cure doctrine, the trial court erred in granting Christus's motion for summary judgment on its counterclaim on this ground. *See* TEX. R. CIV. P. 166a(c); *Mowbray*, 76 S.W.3d at 690; *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

The trial court erred in granting summary judgment to Christus on all three of the grounds specified in Christus's counterclaim against Texas Treasure. Appellants' first issue is therefore sustained.

### V. TEXAS TREASURE'S PLEA IN INTERVENTION[17]

By their second issue, appellants argue that the trial court erred in denying their motion for summary judgment, and in granting Christus's motion for summary judgment,

---

[17] Although the judgment on appeal here did not explicitly incorporate the trial court's prior orders denying Texas Treasure's motion for summary judgment and granting Christus's motion for summary judgment with respect to the claims raised in Texas Treasure's plea in intervention, we note that the final judgment did state that it was "final, disposes of all claims and parties, and is appealable."

20

with respect to the claims raised in Texas Treasure's plea in intervention.[18]  In its amended plea in intervention, Texas Treasure claimed that it was entitled to a declaratory judgment that it is equitably subrogated to the Lanados' rights under their settlement agreement with Christus, and that it was entitled as a matter of law to a declaratory judgment stating that it is not responsible for paying Lanado's hospital bill.[19]

## A.    Equitable Subrogation

Equitable subrogation "is a legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." *First Nat'l Bank of Houston v. Ackerman*, 8 S.W. 45, 47 (Tex. 1888); *see also Murray v. Cadle Co.*, No. 05-06-01481-CV, 2008 Tex. App. LEXIS 1662, at *8 (Tex. App.–Dallas Mar. 6, 2008, no pet. h.).  Equitable subrogation, unlike contractual subrogation, "does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007).  The rationale for this rule is that the insured would otherwise recover twice, a result that "the law refuses to sanction." *Ortiz v. Great S. Fire & Cas. Ins. Co.*, 587 S.W.2d 818, 820 (Tex. Civ. App.–Amarillo 1979), *rev'd on other grounds*, 597 S.W.2d 342 (Tex. 1980).  The burden is on the party claiming equitable

---

[18] Appellants and Christus agree that while general maritime law governs the rights of Lanado with respect to her employer's duty of maintenance and cure, Texas law governs the question of whether appellants have a right of equitable subrogation or indemnity against Lanado or Christus. *See Gauthier v. Crosby Marine Serv., Inc.*, 752 F.2d 1085, 1090 (5th Cir. 1985) (stating that "a shipowner's right to indemnity against a land-locked physician who negligently treats a patient injured at sea is governed by state law").

[19] Appellants also asserted that they are entitled to summary judgment on their plea in intervention pursuant to the "circuity of action" doctrine.  This doctrine provides that a plaintiff's cause of action will be extinguished when, as the result of indemnification obligations or settlement agreements between the parties, a plaintiff would end up indemnifying another party for its own original claim. *Refinery Holding Co., L.P. v. TRMI Holdings, Inc. (In re El Paso Refinery, L.P.)*, 302 F.3d 343, 349-350 (5th Cir. 2002) (citing *Phillips Pipe Line Co. v. McKown*, 580 S.W.2d 4335, 440 (Tex. Civ. App.–Tyler 1979, writ ref'd n.r.e.)).

Both appellants and Christus agree, however, that this doctrine applies if and only if Texas Treasure had a right of equitable subrogation with respect to the Lanados' rights under their settlement agreement with Christus.  Because we find that Texas Treasure had no such right of equitable subrogation, as discussed herein, we conclude that the circuity of action doctrine does not apply.

subrogation to establish he is entitled to it. *Monk v. Dallas Brake & Clutch Serv. Co.*, 697 S.W.2d 780, 782 (Tex. App.–Dallas 1985, writ ref'd n.r.e.).

In the instant case, the settlement agreement executed by the Lanados and Christus provided specifically that Lanado's hospital bill remained outstanding.[20] Moreover, the agreement provided that the Lanados assigned to Christus her rights under the doctrine of maintenance and cure.[21] As such, there is no risk that, absent action by the trial court, the Lanados would recover twice. We therefore conclude that appellants did not establish that they are entitled to be equitably subrogated to the Lanados' rights under the settlement agreement. The trial court did not err in denying Texas Treasure's motion for summary judgment or granting Christus's motion for summary judgment on this basis.

## B.    Declaratory Judgment

In response to Texas Treasure's petition for declaratory judgment, Christus contended that Texas Treasure is responsible for Lanado's entire hospital bill, and is not entitled to indemnification or reimbursement in the case of any intervening negligence on the part of Christus. In support of this argument, Christus relies on *Houston Belt & Terminal Railway Co. v. Burmester*, 309 S.W.2d 271 (Tex. Civ. App.–Houston 1957, writ ref'd n.r.e.). In that case, Burmester, an alien seaman, was injured on shore when the vehicle he was riding in collided with an engine owned and operated by a third party. *Id.* at 272. Burmester's employer paid his medical expenses pursuant to the doctrine of

---

[20] Specifically, the agreement stated in part as follows:

The parties agree that this acknowledgment, satisfaction and assignment as full satisfaction of the outstanding medical and hospital expenses Judy Ann Lanado incurred while a patient at [Christus] is not [to] be construed as forgiveness of the said hospital bill or that any amount paid to Judy Ann Lanado includes the payment of the said hospital bill. [Christus] is agreeing to stand in the place of Judy Ann Lanado by way of assignment and look to her Employer(s) for satisfaction of the hospital bill.

[21] Specifically, the agreement stated in part as follows:

. . . I, Jasper Lanado, individually, and on behalf of Judy Ann Lanado, as her lawful guardian, do hereby assign, grant and convey to [Christus] any and all claims, benefits and any rights, title and interest in those claims and benefits, Judy Ann Lanado had, has, or may have as beneficiary against her Employer(s) for the medical and hospital expenses she incurred while a patient at [Christus]. This assignment conveys to [Christus] all the rights and powers of collection granted to Judy A. Lanado under the maritime laws of the United States of America and/or the laws of the State of Texas.

22

maintenance and cure.  *Id.* at 277.  When Burmester filed a suit for negligence against the third party that owned and operated the engine, his employer intervened, seeking to recover its maintenance and cure payments from the third party.  *Id.*  Our sister court, recognizing that "the laws of the state in which the injury occurred [are] applicable," found that Burmester's employer had no right of indemnity with respect to Burmester's rights.

Christus urges us to follow *Burmester* and conclude that appellants are not entitled to any indemnification or reimbursement for that portion of Lanado's hospital expenses that may have been the result of Christus's negligence.  We are not inclined to do so.  Although neither party was able to direct us to any Texas case of more recent vintage than the half-century-old *Burmester*, the federal Fifth Circuit Court of Appeals has repeatedly since held that a shipowner required to pay maintenance and cure may recover those payments from a third party who caused the injury, even when the employee has already settled with that third party.  *See, e.g., Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1017 (5th Cir. 1994) (stating that "an employer's right to recovery over for maintenance and cure is not negated by a settlement by the injured employee with the third-party tortfeasor."); *Adams v. Texaco, Inc.*, 640 F.2d 618, 620 (5th Cir. 1981) (stating that the underlying rationale for granting the shipowner indemnity "is that the burden of maintenance and cure should be borne by the tortfeasor, not an innocent shipowner."); *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 722 (5th Cir. 1980) (stating that "a seaman's innocent employer is entitled to reimbursement from a third party for maintenance and cure payments made necessary by the third party's negligence."); *Tri-State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969) (stating that "[i]t would be wrong to assess damages against a non-negligent or passively negligent shipowner for loss or injury suffered solely as a result of active negligence of another party, regardless of the absence of a contractual relationship between the parties.").  We conclude that, although it is undisputed that appellants remain liable for Lanado's hospital expenses under the doctrine of maintenance and cure, they are entitled to declaratory judgment that they are not

23

responsible for paying the amount, if any, of the hospital bill that was attributable to Christus's negligence. *See, e.g., Bertram*, 35 F.3d at 1017; *Adams*, 640 F.2d at 620; *Savoie*, 627 F.2d at 722 *Tri-State Oil Tool Indus., Inc.*, 410 F.2d at 186. We remand to the trial court to determine the questions of: (1) whether Christus was in fact negligent; and (2) how much, if any, of Lanado's hospital expenses were attributable to such negligence.

Because there are issues of material fact in dispute with respect to the extent of appellants' liability, the trial court should have denied both Christus's and Texas Treasure's motions for summary judgment with respect to Texas Treasure's petition for declaratory judgment.[22] *See* TEX. R. CIV. P. 166a(c); *FM Props.*, 22 S.W.3d at 872; *Warrantech*, 210 S.W.3d at 765. Appellants' second issue is therefore sustained in part and overruled in part.

## VI. APPELLANTS' DUE PROCESS CLAIMS

By their third issue, appellants contend that the trial court denied their constitutional due process rights: (1) by denying their motion for leave to file a fourth amended answer to Christus's counterclaim to include an effective verified denial; and (2) by only partially granting their motion for leave to file a response to Christus's unserved Supplemental Motion for Summary Judgment. We disagree.

### A. Motion for Leave to File Fourth Amended Answer to Christus's Counterclaim

As discussed above, the trial court denied the appellants' motion for leave to file a fourth amended answer to Christus's counterclaim to include a properly verified denial of Christus's suit on a sworn account. Appellants cite *In re Marriage of Richards*, 991 S.W.2d 32, 37-38 (Tex. App.–Amarillo 1999, pet. dism'd), for the proposition that the trial court's ruling deprived them of their right to due process of law. In *Richards*, the Amarillo Court

---

[22] Appellants state in their reply brief as follows: "Appellants may not ultimately recover 100% of the subrogation claim, but they should not be foreclosed from doing so as a matter of law. The judgment of the trial court should be reversed and the case remanded for trial." With this statement, appellants appear to recognize that, even if the trial court had acknowledged their right to be equitably subrogated to the Lanados' recovery from Christus, this would not extinguish all disputes as to material fact issues so as to warrant the granting of Texas Treasure's summary judgment.

of Appeals held that the trial court's putative attempt to decide factual issues without giving one party the opportunity to respond would violate due process. *Id.* However, in denying Texas Treasure's motion for leave to file a fourth amended answer, the trial court was not deciding any particular fact issue; rather, it was exercising its discretion to determine whether Texas Treasure should be given another opportunity to correct its pleadings. Although, as discussed above, we conclude that the trial court erred in denying Texas Treasure this opportunity, appellants do not cite any authority indicating that such an error in discretion would deprive appellants of their constitutional due process rights. We find that this argument has been inadequately briefed and therefore waived. *See* TEX. R. APP. P. 38.1(h).

**B.    Motion for Leave to Respond to Christus's Unserved Supplemental Motion for Summary Judgment**

Appellants also argue that the trial court deprived them of their due process rights by only partially granting, in the May 26, 2006 final judgment, Texas Treasure's motion for leave to file a response to Christus's unserved Supplemental Motion for Summary Judgment. To support their argument that the trial court "fail[ed] to allow [Texas Treasure] a meaningful opportunity to reply," the appellants point to two "new claims" which they contend were first raised in Christus's Supplemental Motion for Summary Judgment.

First, appellants assert that the claim regarding Lanado's alleged assignment of benefits to Christus was raised for the first time in Christus's Supplemental Motion for Summary Judgment and that the lack of an opportunity for appellants to respond to this claim constituted a deprivation of their due process rights. However, the record reflects that Christus asserted this claim previously in their second amended counterclaim. Moreover, the document allegedly assigning benefits to Christus had been included as an exhibit in Christus's prior motion for summary judgment on Texas Treasure's plea in intervention. Therefore, it was not a violation of appellants' due process rights for the trial court to have denied their request for leave to file a response to this claim, as appellants

25

were able to so respond earlier in the proceedings but chose not to.[23]

Second, appellants contend that Christus's Supplemental Motion for Summary Judgment included an affidavit regarding attorney's fees signed by Christus's trial counsel John S. Langley, which did not appear in Christus's prior motions for summary judgment. While it is true that the Supplemental Motion for Summary Judgment included this new affidavit evidence, the trial court specifically granted Texas Treasure the opportunity to respond with respect to the attorney's fees issue and did not rule on that issue until after considering Texas Treasure's response. We therefore conclude that any error committed by the trial court in denying Texas Treasure the opportunity to respond to Christus's Supplemental Motion for Summary Judgment was harmless error. *See* TEX. R. APP. P. 44.1. Appellants' third issue is overruled.

## VII. CONCLUSION

We affirm that portion of the trial court's judgment denying Texas Treasure's motion for summary judgment on its plea in intervention. We reverse that portion of the trial court's judgment granting Christus's motions for summary judgment on its counterclaim and on Texas Treasure's plea in intervention, and we remand the cause for further proceedings consistent with this opinion.

_____
DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed
this the 17th day of April, 2008.

---

[23] As discussed above, the trial court also denied Texas Treasure's motion for sanctions stemming from the fact that it was not served with Christus's Supplemental Motion for Summary Judgment. However, appellants do not challenge this ruling in their appeal; therefore, we do not address the issue here. *See* TEX. R. APP. P. 47.1; *Martinez v. El Paso County*, 218 S.W.3d 841, 844 (Tex. App.–El Paso 2007, pet. dism'd) ("When reviewing a civil matter, an appellate court has no discretion to consider an issue not raised in the appellant's brief. . .").