

## NUMBER 13-11-00117-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

CORPUS CHRISTI DAY CRUISE, LLC
AND DAY CRUISES MARITIME, LLC,                    Appellants,

v.

CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION D/B/A CHRISTUS SPOHN
HOSPITAL CORPUS CHRISTI-MEMORIAL,                Appellee.

On appeal from the 117th District Court
of Nueces County, Texas.

## OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Opinion by Justice Garza**

This case involves the medical treatment of an employee working on the M/V

Texas Treasure, a gaming vessel.  The owners and operators of the vessel, appellants

Corpus Christi Day Cruise, LLC and Day Cruises Maritime, LLC (collectively referred to as "Texas Treasure"), were found liable for the employee's hospital expenses at trial. Texas Treasure now appeals the judgment, contending that: (1) appellee Christus Spohn Health System Corp. d/b/a Christus Spohn Hospital Corpus Christi-Memorial ("Christus") could not recover maintenance and cure benefits as the employee's assignee under maritime law; (2) Christus should not have been permitted to amend its pleadings because this Court, in remanding the case after a previous appeal, limited the scope of remand; (3) the evidence was legally and factually insufficient to support Christus's promissory estoppel, breach of oral contract, and fraud claims; (4) the trial court erred in rendering judgment on the jury's breach of written contract verdict and abused its discretion in sanctioning Texas Treasure's trial counsel; and (5) attorney's fees are not recoverable under a promissory estoppel theory. We affirm.

## I. BACKGROUND

Judy Ann Lanado, a Filipino national, became ill in August 2002 while working on board the Texas Treasure as a card dealer. Lanado, who was pregnant at the time she fell ill, was first taken to a hospital in Aransas Pass, Texas, and was later transferred to Christus on August 21, 2002. She was diagnosed with cholelithiasis, or gallstones, and underwent surgery for that condition on August 22, 2002. Unfortunately, Lanado developed internal bleeding after the surgery, causing her to suffer severe brain damage and leading to the death of the fetus. On or about September 27, 2002, Lanado lapsed into a cerebral coma, leaving her in a permanent vegetative state. From the time she was admitted to Christus to the time she was transferred to a nursing home on October 1, 2003—a period of over thirteen months—Lanado incurred hospital

2

expenses of $1,089,959.82.

Lanado's brother sued Christus on behalf of Lanado and her minor daughters, claiming that Lanado "was ignored by physicians and staff to a degree falling below the standard of care necessary as required by Texas law." Christus denied the allegations. Subsequently, Texas Treasure intervened in the suit, claiming that it is potentially responsible as Lanado's employer for paying her medical expenses under the admiralty doctrine of maintenance and cure, but that it was entitled to damages on the theory that it was equitably subrogated to Lanado for those expenses. Texas Treasure also sought a declaratory judgment that it is not obligated to pay Christus for Lanado's medical care. Christus filed a counterclaim against Texas Treasure, arguing that Texas Treasure was responsible for the entirety of Lanado's hospital bill as a matter of law.

In the meantime, the Lanados settled their medical malpractice suit against Christus for an undisclosed amount. The settlement agreement provided for Christus to make a lump sum payment to the Lanados and fund an annuity for their benefit. In exchange, the Lanados released their pending claims against Christus and assigned to Christus the right to seek recovery of medical benefits from Texas Treasure. The settlement agreement further stated:

> The parties agree that this acknowledgment, satisfaction and assignment as full satisfaction of the outstanding medical and hospital expenses Judy Ann Lanado incurred while a patient at [Christus] is not [to] be construed as forgiveness of the said hospital bill or that any amount paid to Judy Ann Lanado includes the payment of the said hospital bill. [Christus] is agreeing to stand in the place of Judy Ann Lanado by way of assignment and look to her Employer(s) for satisfaction of the hospital bill.

The trial court approved the settlement agreement and rendered an agreed judgment dismissing the Lanados' claims. Christus and Texas Treasure remained as parties to

3

the underlying suit. Texas Treasure then amended its plea in intervention to seek a declaratory judgment that it was not responsible for the hospital bill because Lanado was no longer indebted to the hospital.

Both parties subsequently then moved for summary judgment on Texas Treasure's amended plea in intervention, and Christus moved for summary judgment on its counterclaim. After a hearing, the trial court denied Texas Treasure's summary judgment motion and granted Christus's motions. On appeal, we affirmed the trial court's denial of Texas Treasure's motion, but reversed the summary judgment granted in favor of Christus. *Day Cruises Mar., L.L.C. v. Christus Spohn Health Sys.*, 267 S.W.3d 42, 63 (Tex. App.—Corpus Christi 2008, pet. denied) ("*Day Cruises I*"). With respect to the issues raised in Christus's counterclaim, we found that the trial court erred by: (1) denying Texas Treasure's motion for leave to amend its pleadings to include a properly verified denial of Christus's sworn account claim; (2) granting summary judgment for Christus on its contractual claim based on a "Guarantee of Payment" form executed by a Texas Treasure representative, because Christus did not have standing as a third-party beneficiary; and (3) granting Christus summary judgment based on the admiralty doctrine of maintenance and cure, in conjunction with an "Assignment of Benefits" form executed by Lanado upon her admission to Christus, because disputed issues of material fact remained as to that claim. *Id.* at 53–60; *see* TEX. R. CIV. P. 166a(c). We stated specifically that the unresolved issues included whether Christus was negligent in its care of Lanado, and how much, if any, of the hospital charges were attributable to such negligence. *Day Cruises I*, 267 S.W.3d at 63. With respect to the claims made in Texas Treasure's plea in intervention, we concluded

4

that: (1) Texas Treasure was not equitably subrogated to the Lanados' rights because there was no risk that, absent action by the trial court, the Lanados would recover twice; and (2) summary judgment was improper as to Texas Treasure's request for declaratory relief, because "a shipowner required to pay maintenance and cure may recover those payments from a third party who caused the injury, even when the employee has already settled with that third party," and because disputed material fact issues remained regarding Texas Treasure's liability. *Id.* at 61–63.

After remand, Christus amended its counterclaim to include claims that Texas Treasure was liable under theories other than maintenance and cure. Specifically, Christus added allegations that Texas Treasure breached Lanado's written employment agreement with the Philippines Overseas Employment Administration ("POEA") and that Texas Treasure breached an oral agreement arising out a telephone call made by its representative to Christus's business office. Christus also added claims of promissory estoppel and fraud.

After the trial court denied a motion for directed verdict filed by Texas Treasure, the case proceeded to trial. The jury found that: (1) Texas Treasure breached the POEA agreement; (2) Texas Treasure orally promised to pay Christus for Lanado's treatment but failed to do so, and Christus substantially relied to its detriment on Texas Treasure's promise; (3) Texas Treasure committed fraud against Christus; (4) Christus's negligence, if any, did not proximately cause any of Lanado's injuries; (5) Lanado's reasonable and necessary hospital expenses were $762,948.63[1]; and (6) Christus was entitled to trial attorney's fees of $557,384.63 as well as conditional appellate fees.

---

[1] The jury therefore implicitly concluded that, of the $1,089,959.82 actually charged by Christus, $327,011.19 was either unreasonable or unnecessary.

The trial court rendered judgment on the verdict and denied motions filed by Texas Treasure to disregard the verdict, for judgment notwithstanding the verdict, and for a new trial. This appeal followed.

## II. DISCUSSION

### A. Assignment of Maintenance and Cure Benefits

By its first issue, Texas Treasure contends that Lanado's assignment of maintenance and cure benefits to Christus was invalid as a matter of law. The doctrine of maintenance and cure, applicable in admiralty cases, provides that a seaman who is injured or becomes ill while in the service of a ship is entitled to food and lodging ("maintenance") and medical services ("cure") from the shipowner. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962); *Mar. Overseas Corp. v. Waiters*, 923 S.W.2d 36, 40 (Tex. App.—Houston [1st Dist.] 1995), *modified on other grounds and aff'd*, 917 S.W.2d 17 (Tex. 1996). A shipowner must pay an injured or ill seaman maintenance and cure regardless of whether the shipowner was at fault or whether the ship was unseaworthy. *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995).

Texas Treasure argues specifically that: (1) "[a] person who furnishes maintenance and cure to a seaman may not proceed directly against the seaman's employer for seaman's benefits, regardless of the creditor's theory of recovery"; (2) "an injured seaman who has not paid his own expenses cannot recover for maintenance and cure"; (3) the failure to pay maintenance and cure is a tort under general maritime law, and the assignment of tort claims is forbidden under that body of law; and (4) the assignment is invalid under Texas law because "[a] settling defendant who is jointly responsible for personal injuries to a common plaintiff may not preserve contribution

6

rights either by obtaining a complete release for all other parties allegedly responsible or by obtaining assignment of the plaintiff's entire claim." *See Beech Aircraft Corp. v. Jenkins*, 739 S.W.2d 19, 22 (Tex. 1987).

We need not address the merits of these issues, however, because the theories of recovery submitted to the jury were not based in any way on Texas Treasure's duty to pay maintenance and cure benefits, or on the assignment of Lanado's rights corresponding to that duty. Instead, the causes of action submitted to the jury were based exclusively on two separate, independent agreements allegedly made by Texas Treasure to pay Christus for Lanado's hospital expenses: (1) the POEA employment agreement, and (2) an alleged oral agreement arising out of a telephone conversation between a Texas Treasure human resources assistant and a Christus employee. Neither the POEA agreement nor the alleged oral agreement referenced or relied upon the doctrine of maintenance and cure nor did they provide for the assignment of Lanado's rights thereunder. It is true that Lanado executed an "Assignment of Benefits" form upon her admission to Christus, and it is true that the settlement agreement between Christus and the Lanados provided that Christus "is agreeing to stand in the place of [Lanado] by way of assignment and look to her Employer(s) for satisfaction of the hospital bill." However, to the extent that the "Assignment of Benefits" form and settlement agreement may have supplied Christus with theories for recovery based on the doctrine of maintenance and cure, those theories were not pleaded and were not submitted to the jury. The jury charge included no question asking about Texas Treasure's liability under the doctrine of maintenance and cure, nor did it include any question asking about whether Lanado effectively assigned her corresponding rights to

7

Christus. Instead, as noted, the jury was only asked whether Texas Treasure breached the POEA employment agreement or the alleged oral contract. Accordingly, even if we were to find, as Texas Treasure urges, that the assignment of maintenance and cure benefits is invalid under admiralty law, that would not justify a reversal of the trial court's judgment.

Texas Treasure's first issue is overruled.

**B.      Amendment of Pleadings on Remand**

By its second issue on appeal, Texas Treasure argues that the trial court erred in permitting Christus to amend its pleadings to add claims related to the POEA agreement and alleged oral contract. Texas Treasure contends that our opinion in *Day Cruises I* limited the scope of remand to only issues involving Texas Treasure's liability to Christus under the doctrine of maintenance and cure.

Generally, when a case has been remanded, amended pleadings may be filed pursuant to Texas Rule of Civil Procedure 63. *Reynolds v. Murphy*, 266 S.W.3d 141, 146–47 (Tex. App.—Fort Worth 2008, pet. denied); *Sepulveda v. Krishnan*, 839 S.W.2d 132, 137 n.2 (Tex. App.—Corpus Christi 1992), *aff'd*, 916 S.W.2d 478 (Tex. 1995); *see* TEX. R. CIV. P. 63. However, when an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue. *Reynolds*, 266 S.W.3d at 147 (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). In interpreting the mandate of the appellate court, courts should look not only to the mandate itself but also to the opinion of the court. *Id.* (citing *Hudson*, 711 S.W.2d at 630).

The mandate issued by this Court following the 2008 appeal stated only that the trial court's summary judgment rulings were affirmed in part and reversed and remanded in part. In our opinion, we stated that "[b]ecause there are issues of material fact in dispute with regard to the extent of [Texas Treasure's] liability under the maintenance and cure doctrine, the trial court erred in granting Christus's motion for summary judgment on its counterclaim on this ground." *Day Cruises I*, 267 S.W.3d at 60. We further stated, in our analysis of the trial court's summary judgment disposing of Texas Treasure's plea in intervention, that "[b]ecause there are issues of material fact in dispute with respect to the extent of [Texas Treasure's] liability, the trial court should have denied both Christus's and Texas Treasure's motions for summary judgment with respect to Texas Treasure's petition for declaratory judgment." *Id.* at 63. Also as part of that analysis, we noted that Texas Treasure is "entitled to declaratory judgment that they are not responsible for paying the amount, if any, of the hospital bill that was attributable to Christus's negligence." *Id.* We then stated: "We remand to the trial court to determine the questions of: (1) whether Christus was in fact negligent; and (2) how much, if any, of Lanado's hospital expenses were attributable to such negligence." *Id.*

Texas Treasure claims that the above-quoted portions of our 2008 opinion show that we limited the scope of remand, thereby prohibiting Christus from amending its pleadings to add claims other than recovery of maintenance and cure. We disagree. In *Day Cruises I*, we considered only whether the trial court erred in granting and denying various motions for summary judgment.[2] We were not asked to restrict the number or

---

[2] We also reviewed Texas Treasure's assertion that the trial court violated its constitutional due process rights by (1) denying its motion for leave to file a fourth amended answer to Christus's counterclaim to include a properly verified denial, and (2) denying in part its motion for leave to file a response to Christus's allegedly unserved Supplemental Motion for Summary Judgment. *Day Cruises*

9

nature of issues that could be raised at an eventual trial, and we did not do so, either explicitly or implicitly. Our discussion of various outstanding material fact issues was clearly made in the context of our analysis of the summary judgment motions and why those motions should have been denied—it was in no way intended to limit any party's right to substantively amend its pleadings upon remand. *See Hudson*, 711 S.W.2d at 630–31 ("On review of summary judgments, the appellate courts are limited in their considerations of issues and facts. In such a proceeding, the movant is not required to assert every theory upon which he may recover or defend. Thus, when a case comes up for a trial on the merits, the parties may be different, the pleadings may be different, and other causes of action may have been consolidated." (Footnote omitted)). Moreover, Texas Treasure does not claim on appeal that it has somehow been prejudiced by the trial court's decision to allow Christus to amend its pleadings as it did. We overrule its second issue.

## C. Evidentiary Sufficiency

By its third issue, Texas Treasure contends that the evidence was insufficient to support the jury's verdict as to Christus's promissory estoppel, breach of oral contract, and fraud claims.

Prior to evaluating the sufficiency of the evidence, we note that the jury charge in this case contained a single broad-form consequential damages question, question number six, which asked: "What sum of money, if any, represents the reasonable and necessary hospital expenses for the services rendered by [Christus] to Judy Lanado?" Neither party objected to the submission of that question on grounds that multiple,

---

*Mar., L.L.C. v. Christus Spohn Health Sys.*, 267 S.W.3d 42, 63–64 (Tex. App.—Corpus Christi 2008, pet. denied). We found the assertion to be without merit. *Id.*

granulated damages questions should instead be submitted. Accordingly, we will uphold the jury's award of $762,948.63 in damages if any of the causes of action found meritorious by the jury are supported by sufficient evidence. *See Wackenhut Corr. Corp. v. De La Rosa*, 305 S.W.3d 594, 619-21, n.26 (Tex. App.—Corpus Christi 2009, no pet.) (holding that, when a broad-form damages question allows the jury to base its award on both valid and invalid grounds, the award may not be disturbed on appeal if the defendant did not preserve an objection to the broad-form question on the basis that the jury may have based its award on an improper ground) (citing *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212 (Tex. 2005); *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003); *Harris County v. Smith*, 96 S.W.3d 230, 232 (Tex. 2002)).

### 1. Standard of Review

In evaluating the legal sufficiency of the evidence supporting a verdict, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We will sustain a legal sufficiency challenge only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. In reviewing factual sufficiency, we consider all the evidence in a neutral light and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### 2. Promissory Estoppel

11

Promissory estoppel is a defensive theory that estops a promisor from denying the enforceability of a promise. *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997)). It requires evidence of (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 141 n.5 (Tex. App.—Corpus Christi 2006, pet. denied). To support a finding of promissory estoppel, the purported promise must be sufficiently specific and definite such that it would be reasonable for the promisee to rely upon it as a commitment to future action. *See Alpha Vista, Inc. v. Holt*, 987 S.W.2d 138, 141–42 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The purported promise also must be more than mere speculation concerning future events, a statement of hope, or an expression of opinion, expectation, or assumption. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 305 (Tex. App.—Dallas 2009, no pet.).

Christus's promissory estoppel theory was based on representations allegedly made by Paula Coots, a Texas Treasure human resources assistant, in a September 5, 2002 telephone conversation with a Christus employee shortly after Lanado was admitted to Christus.[3] In an affidavit introduced as evidence at trial, Christus employee

---

[3] Specifically, Christus alleged as follows in its amended counterclaim:

[T]wo days after Ms. Lanado was admitted to [Christus], on August 23, 2002, Paula Coots, Human Resources assistant for [Texas Treasure], executed a Guarantee of Payment wherein Intervenors guaranteed to the Department of Justice to pay all of Ms. Lanado's medical expenses arising out of the condition of "Gall Bladder." . . . Ms. Coots followed up with [Christus] by telephone on or about September 5, 2002 and stated that [Texas Treasure] would be responsible for the medical expenses incurred to that date as well as those incurred for the care and treatment of Judy Lanado up until the time of Ms.

Sylvia Moncevalles, who passed away prior to trial, averred that she received the subject telephone call from Coots while working at Christus as its insurance verification clerk. According to Moncevalles, Coots said that she represented Texas Treasure, that Texas Treasure would be responsible for Lanado's account, and that all claims regarding Lanado should be sent to Texas Treasure.[4] Coots also informed Moncevalles of Texas Treasure's mailing address.[5] Question number four of the jury charge asked, in its entirety: "Did [Christus] substantially rely to its detriment on Texas Treasure's promise, if any, to pay Ms. Lanado's hospital expenses, and was such reliance by [Christus] foreseeable by Texas Treasure?" The jury answered "yes."

Texas Treasure first argues that the evidence was insufficient to show that Coots "had the authority to do anything beyond communicating the affirmation that Texas Treasure was obligated *to Judy Lanado* to pay her maintenance and cure." (Emphasis in original.) In other words, it contends that the evidence did not support a finding that Coots's representations bound Texas Treasure to pay *Christus*, as opposed to Lanado, for Lanado's care. We disagree. According to Moncevalles's affidavit, Coots informed

Lanado's discharge from the hospital. In return for that promise, [Christus] agreed to provide care and treatment to Judy Lanado while she was a patient at [Christus].

[4] Moncevalles's affidavit stated, in relevant part, as follows:

In September 2002, I was employed at [Christus] in the Admitting Department as an insurance verification clerk. Pursuant to my duties as an insurance verification clerk, I had the ability and was required to enter into a computer system the information I received regarding the patient account, including information received by me regarding insurance verification account payment information. . . . In my capacity as insurance verification clerk, I received a phone [call] from Paula Coots of the Texas Treasure on September 5, 2002. Ms. Coots stated that Texas Treasure would be responsible for the account of J. Lanado, and that all claims should be sent to Texas Treasure, P.O. [Box] 1934, Aransas Pass, Texas, 78335, to the attention of Paula Coots.

[5] A note in Christus's business records, allegedly made by Moncevalles immediately after receiving Coots's telephone call, stated: "Paula Coots frm Texas Treasures clld sts they will be responsible for [Lanado's] acct. Send all claims to Texas Traesure PO Box 1934 Aransas Pass 78335 Atten: Paula Coots" (shorthand and misspellings in original).

13

her that "all claims" regarding Lanado should be sent to Texas Treasure. If Coots was merely reaffirming the existing duty to pay maintenance and cure benefits directly to Lanado, as Texas Treasure urges, there would be no need for Christus to send "all claims" regarding Lanado's care to Texas Treasure. Instead, Christus would bill Lanado for her hospital expenses and Lanado would then need to request her maintenance and cure benefits directly from her employer. The jury could have reasonably concluded, based on Moncevalles's affidavit testimony, that Coots promised that Texas Treasure would pay Christus directly for Lanado's hospital expenses.

Texas Treasure next contends that the jury could not have found that Coots had authority to bind it contractually, because "the [j]ury was not instructed on apparent authority in connection with Question 4; there were no instructions at all." However, a complete definition of apparent authority was submitted alongside question number two. Moreover, Texas Treasure did not object to the lack of an instruction on apparent authority accompanying question number four, nor did it tender a substantially correct instruction in writing to the trial court. Accordingly, we may not reverse the judgment on these grounds. *See* TEX. R. CIV. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.").[6]

---

[6] We nevertheless note that the jury had sufficient evidence upon which it could have found that Coots had actual or apparent authority to make the oral promise at issue. Specifically, evidence established that Coots executed a form titled "Guarantee of Payment (Under Section 253 of the Immigration and Nationality Act)," which stated:

> I, Paula E. Coots, as Human Resource Assistant of the vessel or aircraft MV TEXAS TREASURE employing the alien crewman LANADO, JUDY ANN who upon arrival at the port of PT. ARANSAS, TX on 21 AUGUST 02 was found to be afflicted with, or suspected of being afflicted with GALL BLADDER. I hereby guarantee to pay any and all expenses

14

Finally, Texas Treasure argues that the evidence was insufficient to show that Christus substantially relied to its detriment on Coots's promise. In arguing the contrary, Christus points to evidence that it treated Lanado for a period of time that far exceeded what is legally required by the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"). *See* 42 U.S.C. § 1395dd. EMTALA provides that all hospitals with emergency departments must provide care to any person in need of emergency treatment, without regard to the person's citizenship, legal status or ability to pay. *See id.* § 1395dd(b). The statute states that, if a hospital determines that a person has an emergency medical condition, it must provide "such further medical examination and such treatment as may be required to stabilize the medical condition."[7] *Id.* § 1395dd(b)(1)(A). Hospitals are subject to civil penalties, including fines of up to $50,000, for each violation of EMTALA. *Id.* § 1395dd(d)(1)(A).[8] Here, the medical records which were introduced into evidence established that (1) Christus treated Lanado from her admittance on August 21, 2002 until her discharge on October 1,

incurred or to be incurred for the hospitalization, care, and treatment, and for burial in the event of death, of the said alien crewman.

In *Day Cruises I*, we concluded that the trial court properly granted summary judgment dismissing a breach of contract claim based on this form because Christus was not "clearly and fully spelled out" as a third-party beneficiary. 267 S.W.3d at 57–58. However, the form is still probative evidence as to whether Coots had actual authority to represent Texas Treasure in making the alleged oral promise to pay for Lanado's expenses. The jury could have reasonably inferred that, if Coots had actual or apparent authority to sign the "Guarantee of Payment" on behalf of Texas Treasure on August 23, 2002, then she also had actual or apparent authority to make the oral promise on behalf of Christus on September 5, 2002.

[7] The hospital may also transfer the patient to another medical facility under certain limited circumstances not applicable here. 42 U.S.C. § 1395dd(b)(1)(B), (c). Further, the hospital is deemed to have satisfied the statutory requirements if the patient refuses to consent to treatment. *Id.* § 1395dd(b)(2). That exception is also not applicable here.

[8] Only "participating hospitals," which are hospitals that have agreed to accept federal Medicare and Medicaid funds, are subject to the civil penalty. *Id.* § 1395dd(d)(1)(A); *see id.* § 1395cc. It is undisputed that Christus is a "participating hospital."

2003, and (2) Lanado's condition was "stabilize[d]" on September 27, 2002, when she lapsed into a coma. *See id.* § 1395dd(e)(3)(B) (stating that "to stabilize" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . ."). The jury could have reasonably concluded from this evidence that, absent Coots's promise, Christus would not have treated Lanado substantially beyond September 27, 2002. *See Sandel*, 243 S.W.3d at 753 ("To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise.").[9]

Viewing the evidence in the light most favorable to the verdict, *see City of Keller*, 168 S.W.3d at 822, we conclude that the jury's finding as to promissory estoppel was supported by legally sufficient evidence. Moreover, viewing the evidence in a neutral light, we cannot conclude that the judgment is so contrary to the weight of the evidence as to be clearly wrong or unjust. The evidence is therefore factually sufficient. *See Cain*, 709 S.W.2d at 176. In light of our conclusion, we need not address whether Christus's breach of oral contract or fraud[10] claims were supported by sufficient

---

[9] Texas Treasure also states in its appellate brief that the evidence was insufficient to support the jury's finding that Christus's reliance on Coots's promise was foreseeable. *See, e.g., Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002). Texas Treasure has not, however, provided any argument or citations to relevant authority in support of this contention. Therefore, it is waived. *See* TEX. R. APP. P. 38.1(i).

[10] Exemplary damages may be awarded when a jury unanimously finds by clear and convincing evidence that fraud occurred. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(1), (e) (West Supp. 2011). Here, although the jury found that Texas Treasure committed fraud, the finding was not unanimous and the jury did not award exemplary damages. Accordingly, even if the evidence was insufficient to support the jury's fraud verdict, the jury's compensatory damages award would nevertheless be entirely justified by the promissory estoppel verdict, which we have determined was supported by sufficient evidence. It follows that we need not address the sufficiency of the fraud evidence. *See Wackenhut Corr. Corp. v. De La Rosa*, 305 S.W.3d 594, 619-21, n.26 (Tex. App.—Corpus Christi 2009, no pet.); *see also* TEX. R. APP. P. 47.1.

16

evidence.[11]  *See Wackenhut Corr. Corp.*, 305 S.W.3d at 619–21, n.26; *see also* TEX. R.

APP. P. 47.1.  Texas Treasure's third issue is overruled.

**E.    Attorney's Fees**

By its fifth issue, Texas Treasure claims that a promissory estoppel action will not

support an award of attorney's fees under subsection 38.001(8) of the Texas Civil

Practice and Remedies Code.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)

(West 2008) (stating that a party may recover reasonable attorney's fees in a claim for

"an oral or written contract").  A majority of courts that have considered this issue have

concluded that attorney's fees are, in fact, available under that statute to plaintiffs

prevailing on a promissory estoppel claim.  *See Preload Tech., Inc. v. A. B. & J. Constr.*

*Co.*, 696 F.2d 1080, 1093–94 (5th Cir. 1983) (construing predecessor to subsection

38.001(8)) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90, cmt. D (1981) ("A

promise binding under this section [regarding promissory estoppel] is a contract"); 5

WILLISTON ON CONTRACTS § 692 at 320 (3d ed. 1961) (referring to the creation of

"original contractual liability on the basis of promissory estoppel")); *Traco, Inc. v. Arrow*

*Glass Co.*, 814 S.W.2d 186, 193–94 (Tex. App.—San Antonio 1991, writ denied);

---

[11] We also need not address Texas Treasure's fourth issue, in which it argues that the trial court erred in rendering judgment on the jury's breach of written contract verdict.  The breach of written contract claim was based on the POEA employment agreement; the jury found that Texas Treasure failed to comply with the terms of that contract to provide payment for Lanado's hospital treatment.  On appeal, Texas Treasure notes that the POEA agreement incorporated certain standard terms and conditions promulgated by the Philippines Department of Labor and Employment, but that the version of those standard terms that was introduced into evidence, dated 1996, was not in fact applicable to Lanado. Instead, a later version of the standard terms, dated 2000—which, crucially, limited the employer's liability to expenses for work-related injuries only—were specifically referenced in the POEA agreement.  Texas Treasure argues on appeal that the trial court erred in ruling, based on certain conduct by Texas Treasure's counsel, that Texas Treasure was "estopped" from presenting the 2000 standard terms to the jury.  Texas Treasure characterizes this ruling as a sanction against its trial counsel, and argues that it constituted an abuse of discretion by the trial court.  Again, we need not address these issues because, even if the trial court erred in its ruling and even if the evidence was insufficient to support the breach of written contract claim, the jury's damages award would nevertheless be entirely justified by the promissory estoppel verdict, which we have determined was supported by sufficient evidence.  *See Wackenhut Corr. Corp.*, 305 S.W.3d at 619–21, n.26; *see also* TEX. R. APP. P. 47.1

*Adams v. Petrade Int'l*, 754 S.W.2d 696, 720 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *see also Safe Env't, Inc. v. Pelzel & Assocs.*, No. 03-98-00721-CV, 1999 Tex. App. LEXIS 7628, at *8–9 (Tex. App.—Austin 1999, no pet.) (not designated for publication); *but see Doctor's Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 637–39 (Tex. App.—Houston [1st Dist.] 2004, pet. abated) (finding that a promissory estoppel action will not support recovery of attorney's fees under section 38.001(8) because such an action assumes the absence of an enforceable contract). In light of the statute's mandate that we construe it liberally, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (West 2008), we agree with the majority of courts and conclude that attorney's fees are available under subsection 38.001(8) for a plaintiff prevailing on a promissory estoppel theory. Texas Treasure's fifth issue is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
5th day of July, 2012.

18